**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

Mar 09 2020

| IN THE MATTER OF THE ARREST OF<br><br>JOSE RODRIGUEZ | )<br>)<br>)<br>)<br>) | Case No. 1-20-mj-00021-MMS |
|---|---|---|

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT**

I, FRANK D. REID, Jr., being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for an arrest warrant for JOSE RODRIGUEZ, date of birth May 13, 1991, residing in Hoonah, Alaska (hereinafter "SUBJECT"). An investigation has revealed that the SUBJECT knowingly transferred obscene matter to another individual who has not attained the age of 16 years, in violation of 18 U.S.C. § 1470.

2. I am currently employed as a Special Agent (SA) for the Federal Bureau of Investigation (FBI), and have been so employed since December 2010. During my employment with the FBI, I have been assigned the investigation of criminal matters within the jurisdiction of the FBI, with emphasis in the areas of drugs, violent crimes, crimes against children, and white-collar investigations. Prior to being assigned to the Anchorage Division, I served an assignment in San Jose, California. In San Jose, I was tasked to investigate crimes against children, white collar, and intellectual property investigations. I have been assigned to the Juneau Resident Agency within the Anchorage Division of the FBI since April of 2018. In my current



assignment, I am responsible to investigate all criminal activity currently under the jurisdiction of the FBI to include investigations into various crimes against children.

3. Due to the proliferation of technical resources in criminal activity, particularly the use of computers, smart phones, and other digital devices, I have investigative experience with technical aspects of criminal investigations, and I have attended trainings, conferences, and seminars that have provided me training on technical resources.

4. I am familiar with the information contained in this affidavit based upon the investigation I have conducted, which included conversations with law enforcement officers and others, and the review of reports, database records, and other acquired evidence.

5. Because I submit this affidavit for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me or the government. I have only included those facts necessary to establish probable cause to believe that, JOSE RODRIGUEZ, date of birth May 13, 1991, residing in Hoonah, Alaska has violated 18 U.S.C. § 1470.

**RELEVANT STATUTES**

6. The relevant statute is as follows:

a. 18 U.S.C. § 1470 provides, in relevant part, Whoever, using the mail or any facility or means of interstate commerce, knowingly transfers obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so, shall be fined under this title.



**DEFINITIONS**

7. The following terms are relevant to this affidavit in support of this application for an arrest warrant:

a. *Child Erotica:* The term "child erotica" means any material relating to minors that serves a sexual purpose for a given individual, including fantasy writings, letters, diaries, books, sexual aids, souvenirs, toys, costumes, drawings, and images or videos of minors that are not sexually explicit.

b. *Child Pornography:* The term "child pornography" is defined at 18 U.S.C. § 2256(8). It consists of visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct. *See* 18 U.S.C. §§ 2252 and 2256(2), (8).

c. *Minor:* The term "minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

d. *Sexually Explicit Conduct:* The term "sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality;


(c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

e. *Visual Depictions:* "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

8. The following technical terms are relevant to my affidavit in support of this application for an arrest warrant.

a. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers[1] and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including cellular networks and satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail").

[1] The term "computer" is defined by 18 U.S.C. § 1030 (e) (1) to mean "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."



b. Set forth below are some definitions of technical terms, used throughout this Affidavit, and in Attachments A and B, hereto, pertaining to the Internet and computers more generally:

i. *Digital device*: A "digital device" includes any electronic system or device capable of storing and/or processing data in digital form, including central processing units; desktop, laptop or notebook computers; tablets, internet-capable cellular phones (smart phones), or personal digital assistants; wireless communication devices such as telephone paging devices, beepers, and mobile telephones; peripheral input/output devices such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices such as modems, cables, and connections; storage media such as hard disk drives, flash drives, thumb drives, floppy disks, compact disks, DVDs, magnetic tapes, and memory chips; and security devices.

ii. *Domain Name*: "Domain names" are common, easy to remember names associated with an internet protocol address (defined below). For example, a domain name of "www.usdoj.gov" refers to the internet protocol address of 149.101.1.32.

iii. *Internet Service Providers (ISPs) and the Storage of ISP Records*: Internet Service Providers are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other



communications equipment. ISPs can offer a range of options in providing

access to the Internet, including telephone-based dial-up, broadband-based

access via digital subscriber line (DSL) or cable television, cellular

networks, dedicated circuits, or satellite-based subscription. ISPs typically

charge a fee based upon the type of connection and volume of data, called

bandwidth, which the connection supports. Many ISPs assign each

subscriber an account name – a user name or screen name, an "e-mail

address," an e-mail mailbox, and a personal password selected by the

subscriber. By using a computer equipped with a telephone or cable

modem, the subscriber can establish communication with an ISP and can

access the Internet. ISPs maintain business and other records ("ISP

records") pertaining to their subscribers (regardless of whether those

subscribers are individuals or entities). These records may include

account application information, subscriber and billing information,

account access information (often times in the form of log files), e-mail

communications, information concerning content uploaded and/or stored

on or via the ISP's servers, and other information, which may be stored

both in computer data format and in written or printed record format. ISPs

reserve and/or maintain computer disk storage space on their computer

system for their subscribers' use. This service by ISPs allows for both

temporary and long-term storage of electronic communications and many

other types of electronic data and files. Typically, e-mail that has not been

opened by an ISP customer is stored temporarily by an ISP incident to the


transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage." *See* 18 U.S.C. § 2510 (15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long-term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service." *See* 18 U.S.C. § 2711(2).

iv.  *Internet Protocol Address (IP Address)*: Every computer or device on the Internet is referenced by a unique internet protocol address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 254. An example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Some ISP's employ dynamic IP addressing, that is they allocate any unused IP addresses at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time, and duration of the Internet session for each IP address and can identify the user of that IP address for such a

session from these records. On the other hand, some ISP's, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. Absent some break in service, static IP addresses generally do not change over a period of time, and typically remain assigned to a specific computer.

v. The terms "*records*" and "*information*" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writings, drawings or paintings); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

**FACTS IN SUPPORT OF PROBABLE CAUSE**

*Information Relating to COMPLAINANT*

9. In December 2019, FBI Agent Frank Reid (Affiant) reviewed information from the Hoonah Police Department; Case 19-0227. In summary, on or about March 10, 2019, the Hoonah Police Department received information that Jose Rodriguez (RODRIGUEZ), date of birth May 13, 1991, was furnishing alcohol to minors and engaging in activities with those minors consistent with "grooming" them for sexual activity.

10. The investigation was initiated as a result of the interview of a 14-year-old female minor (COMPLAINANT) who provided information during a February 22, 2019, forensic interview conducted by the Child Advocacy Center (CAC) in Juneau, Alaska.

11. During the interview, the COMPLAINANT said the following:



a. RODRIGUEZ was living with her and her mother. RODRIGUEZ and the COMPLAINANT began talking to one another as what the COMPLAINANT viewed as a friendship. They spoke both in-person and via text message exchanges.

b. At several unknown times, RODRIGUEZ told the COMPLAINANT that he liked her more than a friend and made comments about her looks. RODRIGUEZ also offered for the COMPLAINANT to smoke marijuana and vape with him. COMPLAINANT advised RODGRIGUEZ was also purchasing alcohol for other minors in Hoonah.

c. COMPLAINANT said that in addition to herself, she heard rumors that RODRIGUEZ was "trying to get with" two other minor females, ages 14 (hereinafter "POSSIBLE VICTIM 1") and 16 (hereinafter "POSSIBLE VICTIM 2") in the Hoonah area. Based on Affiant's training and experience, "trying to get with" is slang for attempting to have relations of a sexual nature and/or engage in a romantic relationship with another individual.

d. COMPLAINANT said RODRIGUEZ told POSSIBLE VICTIM 2 he wanted to marry her. Based on the investigation to date, your Affiant is not aware if POSSIBLE VICTIMS 1 and 2 have been identified.

e. COMPLAINANT was also aware of RODRIGUEZ sending a nude photo of himself through a text message to a 14-year-old minor female (hereinafter "VICTIM 1") at some point between June and July 2018.

12. The COMPLAINANT advised she still had a text message exchange saved on her phone where RODRIGUEZ stated that he liked her. Subsequent to the interview, she provided a copy of screenshots from that exchange to law enforcement. The date of this text message exchange is unknown. The content of the exchange is as follows;



*COMPLAINANT- "I don't know"*

*RODRIGUEZ- "What do you mean you don't know/Sorry to say this but I do/But I'm with your moms"*

*COMPLAINANT- "You do what?"*

*RODRIGUEZ- "And you are not my age"*

*COMPLAINANT- "What?"*

*RODRIGUEZ- "Nothing"*

*COMPLAINANT- "Okay"*

*RODRIGUEZ - "Like you"*

*COMPLAINANT - "Oh okay"*

*RODRIGUEZ- "You don't"*

*COMPLAINANT- "I like you as a friend"*

*RODRIGUEZ- "I know that I'm not saying anything"*

*COMPLAINANT- "Okay"*

*RODRIGUEZ- "Erase the texts"*

*COMPLAINANT- "Okay i will"*

*Investigation of Other Possible Victims and Victim 1*

13. During the investigation, the Hoonah Police Department interviewed five of the minors and VICTIM 1 previously identified by the COMPLAINANT as minors who RODGRIGUEZ was purchasing alcohol for. Except for VICTIM 1, none of the minors, both male and female, disclosed RODRIGUEZ ever bought them alcohol or made comments of a sexual nature towards them.

14. One of the minors interviewed was a 16-year-old female. During the interview, she admitted to drinking alcohol, but was not forthcoming with the Hoonah Police Officer as to how she was



able to obtain it. She also stated she did not know who RODRIGUEZ was. The 16-year-old minor was interviewed in the presence of her mother. Based on Affiant's training and experience, your Affiant knows that individuals who are interviewed in the presence of others; such as a parent, a spouse, or a manager, are not always forthcoming. This is due to the fact they believe if they provide truthful information, they might be embarrassed and/or concerned about the possible repercussions of being forthcoming.

15.     On or about March 15, 2019, VICTIM 1 was initially interviewed. VICTIM 1 said the following:

    a.   VICTIM 1 said she did not drink alcohol but knew of other minors who did. VICTIM 1 was not aware of who bought the alcohol for the other minors.

    b.   VICTIM 1 was familiar with who RODRIGUEZ was and stated the two of them had exchanged text messages. VICTIM 1 advised RODRIGUEZ told her she was beautiful, pretty, and wanted to smoke marijuana with her. VICTIM 1 advised she told RODRIGUEZ how old she was. RODRIGUEZ knew she was friends with COMPLAINANT 1, who was a similar age.

    c.   VICTIM 1 advised RODRIGUEZ sent VICTIM 1 photos of himself. The photos were of himself shirtless and a photo of his private parts. VICTIM 1 advised she deleted all the images and text message he sent her during the summer of 2018, but still had the phone that she used at the time in her possession.

16.     VICTIM 1's phone was provided to the Hoonah Police Department and sent to the Alaska Department of Public Safety Technical Crimes Unit for processing. On July 1, 2019, the cellular telephone provided by VICTIM 1 was examined by the Alaska Department of Public Safety Technical Crimes Unit. The results of the examination determined the cellular telephone had been factory reset



prior to being provided to law enforcement. As a result of this factory reset, no items of evidentiary value were found.

*Recorded Phone Call between RODRIGUEZ and VICTIM 1*

17. Based on the information provided by VICTIM 1, an Officer with the Hoonah Police Department applied for and was granted a *Glass* Warrant, Warrant #1HN-19-01SW, to record a conversation between VICTIM 1 and RODRIGUEZ on March 15, 2019.

18. On March 15, 2019, a phone call was placed to RODRIGUEZ, telephone number (907) 612-1105, by VICTIM 1. During the call, VICTIM 1 asked the person who answered the phone "is this Jose?" and the individual responded, "Uh huh." VICTIM 1 then identified herself, stated she needed his help, and asked him if he remembered the naked pictures he sent her this summer. The individual again replied "Uh huh." VICTIM 1 stated that her mother was snooping around, and she wanted to delete the photos from her phone so her mother wouldn't find out. The individual replied "Alright." The call continues and the individual eventually appears to hang up the phone.

19. Hoonah Police was able to confirm the telephone number (907) 612-1105 was utilized by RODRIGUEZ after conferring with COMPLAINANT 1's parents, who advised this was the number RODRIGUEZ used. Additionally, this telephone number appeared in VICTIM 1's cellular telephone provider's billing records which were provided by VICTIM 1's parent. These records contained logs of multiple text message exchanges on July 24, 2019 and July 25, 2019, between VICTIM 1 and telephone number (907) 612-1105.

20. On March 15, 2019, a Search Warrant, Warrant #1HN-19-02SW, was obtained for RODRIGUEZ's cellular telephone (hereinafter "SUBJECT DEVICE"). The Hoonah Police Department contacted RODRIGUEZ at his residence. After making contact, RODRIGUEZ was asked if his number

was (907) 612-1105 and he replied, "Uh Huh." The SUBJECT DEVICE was subsequently seized and sent to the Alaska Department of Public Safety Technical Crimes unit to be analyzed.[2]

21. The Affiant reviewed the Alaska Department of Public Safety Technical Crimes Unit reports related to the examination of the SUBJECT DEVICE. In the report, multiple photos of a male individual, believed to be RODRIGUEZ, were seized. There were multiple photos of the male individual shirtless, which was the description of one of the photos described by VICTIM 1. Multiple photos of a male genitalia were also found and seized. Lastly, an image with a Puerto Rican identification card for RODRIGUEZ was seized from the SUBJECT DEVICE. No text messages of investigative interest were seized during the allotted timeframe outlined in Warrant #1HN-19-02SW, and no images of underage females were observed.

22. The Technical Crimes Unit Investigator further advised there were in excess of over 1,000 text messages on the SUBJECT DEVICE that were not searched due to the temporal restriction imposed as part of Search Warrant #1HN-19-02SW. The Investigator advised the multiple pictures of the male genitalia could have been sent in text messages, but it is unknown at this time due to the fact the text messages outside of the limited date range authorized by Search Warrant #1HN-19-02SW were not examined.

23. On July 12, 2019, the Hoonah Police Department took several of the images located on the SUBJECT DEVICE for VICTIM 1 to review. Approximately 5 photos were shown to VICTIM 1. The images that included male genitalia were redacted due to the age of VICTIM 1. VICTIM 1 advised

[2] It should be noted the Honorable State Judge Mary Kay Germain restricted the scope of Search Warrant #1HN-19-02SW for investigators to review text message exchanges between the dates of July 24, 2018 and July 25, 2018. Based on your Affiant's review of the toll records, which only outlined toll records from June 26, 2018 through July 26, 2018, the Affiant believes the scope of this search was restricted to this date range due to the fact that VICTIM 1's toll records, which were copies provided by VICTIM 1's parents, appeared to only show contacts with telephone number (907) 612-1105 on July 24, 2018, and July 25, 2018.



RODRIGUEZ sent her a total of two photos, and she recognized one of those images from the group of 5 shown to her. The photo showed a male's stomach, hand, and redacted genitalia. The male has distinctive tattoos on his stomach and hand. In the background of the photo was a stuffed Sponge Bob Square Pants doll. At this time, it is unknown if the tattoos in the photo have been compared to the tattoos on RODRIQUEZ's person.

24. On July 22, 2019, RODRIGUEZ was charged in The Superior Court for the State of Alaska, First Judicial District at Hoonah, with One Count of Distribution of Indecent Material to Minors, a violation of Alaska Statute 11.61.128(a), a Class C Felony. Charges in this matter are still pending.

25. On February 6, 2020, your Affiant received subpoena returns from AT&T for phone number connected to the phone seized from RODRIGUEZ pursuant to Search Warrant #1HN-19-02SWnumber believed to belong to RODRIGUEZ, and for the phone number connected to VICTIM 1's phone. These records were more complete than those originally provided by VICTIM 1's parents and reviewed by Hoonah Police prior to seeking Search Warrant #1HN-19-02SW. The first identified communication between SUBJECT DEVICE and VICTIM 1's phone was on July 24, 2018. The last communication was on August 10, 2018. These records show over 700 text message exchanges between the two phone numbers during the noted time period.

26. Based on Affiant's review of the Hoonah Police Department's investigation, the Hoonah Police Department did not have the AT&T toll records at the time they applied for Search Warrant #1HN-19-02SW, which included additional contacts between RODRIGUEZ and VICTIM 1 in August 2018.

27. On February 7, 2020, Affiant applied for and was granted a Search Warrant for the SUBJECT DEVICE; Search Warrant 1:20-mj-00009-MMS. The scope of this warrant was to search



was to search and seize the items which constituted evidence, fruits or instrumentalities of violations or attempted violations of 18 U.S.C. §§ 1470 and 2422(b) from the SUBJECT DEVICE.

28.     On February 20, 2020, the SUBJECT DEVICE was provided to the FBI Anchorage Division's Computer Analysis Response Team (CART) Forensic Examiner for further extraction and review.

29.     In reviewing the SUBJECT DEVICE for images and text messages which constituted evidence, fruits or instrumentalities of violations or attempted violations of 18 U.S.C. §§ 1470 and 2422(b) from the SUBJECT DEVICE, the Forensic Examiner observed the following;

    a.  One thumbnail image believed to be child pornography.  The image was described to affiant as an image of a prepubescent female's head and nude partial torso with her hand holding an adult male's penis with what appears to be semen running down it. Behind the prepubescent female appears to be the end of a bed and other bedroom furniture.  No other part of the male is visible.  The file path of the image reflects being stored as a cache file of Google Chrome.  Based on my training and experience, the file path indicates the image was likely obtained from the internet or other remote source.  No further analysis of the image was completed.

    b.  A second thumbnail image believed to be possible child pornography.  The image was described to the affiant as an image of what appears to be a prepubescent female's vagina penetrated by the top of an adult male's penis, with only the body of the penis visible.  Overlaid onto the front of the vagina are large animated eyes and long dark hair tied in a "pigtail" on the side.

    c.  A third thumbnail image believed to be possible child pornography or child erotica. The image was described to the affiant as including two prepubescent females, one


Mar 09 2020

fully nude and one only wearing a shirt with the bottom half of her body possibly

naked but difficult to confirm.  Standing behind the two prepubescent females is a

possible adult male, fully clothed and with only the left side of his body viewable

from below the chest to his foot.  The head and face of adult is not included in the

image.  Two additional thumbnail images of these same two prepubescent girls

appearing to be of a series were noted directly next to this image.  No further analysis

of the image was completed.

    d.   Multiple images of marijuana, drug paraphernalia, U.S. currency, and firearms.

    e.   Multiple text messages of what appears to be user of the SUBJECT DEVICE and

        others currently unknown discussing the sale of controlled substances.

    30.    On February 27, 2020, a rollover Search Warrant request was sent the Court to amend

Search Warrant 1:20-mj-00009-MMS.  The rollover request sought to include searches for items which

constituted evidence, fruits or instrumentalities of violations or attempted violations of 18 U.S.C. §§

1470, 2251(a), 2252(a)(1), 2252(a)(4)(B), and 2422(b) and 21 U.S.C. § 841(a)(1).  On February 28,

2019, the court granted the rollover Search Warrant, Search Warrant 1:20-mj-00017-MMS.

    31.    On March 2 and 3, 2020, I reviewed the phone seized from RODRIGUEZ.  In summary,

I observed the following;

    a.   One image of what appeared to be consistent with the groin area of a female toddler

        with the vagina exposed.  Also included in the image was what appeared to an adult

        finger and a man's penis either penetrating the vagina or anus of the toddler.  The

        image was subsequently compared to a database of known child pornography images

        by an FBI Forensic Examiner, but this image did not yield a result as a known child



pornography image. This image was located in cached space on the phone, and appeared to have been accessed through the Google Chrome browser.

b. One image of what appeared to be a partially nude, female wearing a blue shirt, who appeared between the age of 12 to 16 years old, with what appeared to be semen around her mouth. In the background of the image is what appears to be an adult male. The image was subsequently compared to a database of known child pornography images by an FBI Forensic Examiner, but this image did not yield a result as a known child pornography image.

c. Multiple URLs specific to pornography related to "Teens."

d. Multiple images of unknown, clothed females who appear to be between the ages of 15-20 years of age.

e. Multiple images and videos of adult pornography.

f. Multiple images of RODRIGUEZ to include the image of RODRIGUEZ's penis that was recognized by VICTIM 1. It should be noted that in this unredacted image, the visible penis contains a distinctive triangle-shaped birthmark that would be readily apparent to any individual who viewed the image.

g. Multiple text messages related to the distribution of marijuana, images of what appeared to be marijuana including individually packaged for distribution, multiple images of U.S. and foreign currency, and firearms.

32. Affiant reviewed the potential child pornography/child erotica images originally described to him by the FBI Forensic examiner on February 20, 2020. A summary from the review of the images is as follows;



a. The image was described to affiant as an image of a prepubescent female's head and nude partial torso with her hand holding an adult male's penis with what appears to be semen running down it. The image was reviewed by the affiant and it appeared to be of an adult female who exhibited the physical characteristics of a prepubescent child.

b. The image described to the affiant as an image of what appears to be a prepubescent female's vagina penetrated by the top of an adult male's penis, with only the body of the penis visible. Overlaid onto the front of the vagina are large animated eyes and long dark hair tied in a "pigtail" on the side. The image was reviewed by affiant and appeared to be consistent with child pornography. The image was subsequently compared to a database of known child pornography images by an FBI Forensic Examiner, but this image did not yield a result as a known child pornography image.

c. The image described to the affiant as including two prepubescent females, one fully nude and one only wearing a shirt with the bottom half of her body possibly naked but difficult to confirm. Standing behind the two prepubescent females is a possible adult male, fully clothed and with only the left side of his body viewable from below the chest to his foot. The head and face of adult is not included in the image. The affiant reviewed these images and they appear to be of either RODRIGUEZ's children and/or family members, or possibly the children of RODRIGUEZ's girlfriend at the time. Other photos of the same children in clothing, and partial clothing, were also observed. This image, and other similar images of the children, were subsequently compared to a database of known child pornography images by an


FBI Forensic Examiner. These images did not yield a result as known child pornography images.

33. On March 4, 2020, an FBI Forensic Examiner submitted all images and videos on the SUBJECT DEVICE through a forensic tool designed to identify known child pornography images based on hash values. The results of this search yielded one known child pornography image. The FBI Forensic Examiner described the known image as the backside of a female and the image was part of a known series. It should be noted that the FBI Forensic Examiner who submitted the images through the forensic tool is not the same FBI Forensic Examiner who originally reviewed the SUBJECT DEVICE on February 20, 2020.

*Indications of Possible Other Digital Devices*

34. Affiant was unable to locate communications between RODRIGUEZ and VICTIM 1 on the SUBJECT DEVICE. Based on Affiant's review of the SUBJECT DEVICE and the aforementioned AT&T records, it is Affiant's belief the SUBJECT DEVICE was not the cellular telephone originally used for the text message exchanges based on the following;

    a. During the review, Affiant observed several images featuring RODRIGUEZ and at least two different cellular telephones which do not appear to match the SUBJECT DEVICE currently in the FBI's custody.

    b. Text message activity appear to begin after September 2018, which is subsequent to the contacts described by VICTIM 1.

    c. The AT&T records indicate the make and model of the phone used during the July 24, 2018, through August 10, 2018, text exchanges between RODRIGUEZ and VICTIM 1 differs from the make and model of the SUBJECT DEVICE.



    d. The image identified by VICTIM 1 and observed on the SUBJECT DEVICE appears to have been created on March 31, 2018, and taken by another device. This device model number differed from both the SUBJECT DEVICE and the device referenced in the AT&T records.

35. RODRIGUEZ's appeared to utilize pre-paid phone accounts. Based on my training experience, I know that people who use pre-paid phone accounts regularly exchange phones. I also know that data can be transferred from one phone to the other with the use of SD cards or back-up from a cloud server. Various types of data can be transferred over based on the user's preference and/or the phone's operating system. Conversely, information can also be chosen not to transfer over, such as deleted text messages, to the new phone.

36. Affiant has reviewed RODRIGUEZ's criminal history. RODRIGUEZ has previous convictions for drug-related distribution offenses which appear to be connected with distributing controlled substances to minors.

*Summary of Probable Cause*

37. The purpose of this affidavit is to seek an arrest warrant for JOSE RODRIGUEZ, date of birth May 13, 1991, residing in Hoonah, Alaska. Based on my investigation, there is probable cause to believe that RODRIGUEZ has violated 18 U.S.C. § 1470. I submit that there is probable cause to arrest RODRIGUEZ for the following reasons:

a. Communications between Victim 1 and RODRIGUEZ occurred between July 24, 2018, and approximately August 10, 2018. During this time, VICTIM 1 stated that RODRIGUEZ sent her a photograph with his exposed genitalia. VICTIM 1 has identified this photograph among those photographs located on the SUBJECT DEVICE. VICTIM 1 also described RODRIGUEZ's


statements about VICTIM 1 being beautiful and pretty, and described that RODRIGUEZ had offered her marijuana. In Affiant's training and experience, each of these actions is consistent with RODRIGUEZ attempting to groom VICTIM 1 to engage with him in sexually explicit conduct.

b. Additional evidence supports the conclusion that RODRIGUEZ has a sexual interest in minors consistent with him sending an image of his genitalia to a minor that he was attempting to groom. That evidence includes:

   i. COMPLAINANT described RODRIGUEZ making multiple statements about liking her more than as a friend and "trying to get with" her. COMPLAINANT also provide law enforcement with text messages in which RODRIGUEZ told COMPLAINANT that he liked her, and also instructed her to erase the record of that communication.

   ii. The search of the SUBJECT DEVICE yielded multiple images, videos, and URL links related to "Teen" pornography. Affiant observed multiple images of clothed females who appeared to be between the age of 15 to 20 years of age. In addition, one image on the SUBJECT DEVICE was identified as child pornography, and three additional images are suspected. Based on my training and experience, individuals who view this type of material, are demonstrating a sexual interest in minors or minors who appear to be minors.

c. Text messages and images observed by the FBI Forensic Examiner and Affiant appear to corroborate the COMPLAINANT's information

Mar 09 2020

RODRIGUEZ was involved with the distribution of marijuana and/or other controlled substances.

**CONCLUSION**

38. I submit that this affidavit supports probable cause for an arrest warrant for JOSE RODRIGUEZ, date of birth May 13, 1991, residing in Hoonah, Alaska (hereinafter "SUBJECT"). Based on my investigation, there is probable cause to believe that the SUBJECT has knowingly distributed obscene matter to a person he knew to be a minor, specifically, an image of his genitalia to a 14 year old, in violation of 18 U.S.C. § 1470.

FRANK D. REID, Jr.
Special Agent
Federal Bureau of Investigation

Subscribed and sworn ~~to before~~ me this
9th day of March, 2020

UNITED STATES DISTRICT COURT DISTRICT OF ALASKA

Matthew M. Scoble
United States Magistrate Judge
District of Alaska
Anchorage, Alaska